**UNITED STATES v. EASTERDAY et al.**
**No. 314.**

Circuit Court of Appeals, Second Circuit.
April 4, 1932.

Boardman Wright, of New York City, for all appellants.

I. Nicholas Gordon, of New York City, for Easterday.

Solomon Badesch, of New York City, for Harry Greenhaus.

Benjamin F. Fanger, of New York City, for Charles H. Greenhaus.

George Z. Medalie, of New York City (Leon Leighton, G. S. Tarbell, Jr., and Edmund L. Palmieri, all of New York City, of counsel), for the United States.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The gravamen of the crime alleged was receiving money and securities from putative customers for the purchase and sale of shares of stock without executing their orders. The evidence was ample to show that the defendants made no effort to fulfill the contracts which they professed to make, but merely pocketed the proceeds, and, upon being detected in New York where they first carried on, took up new quarters in Washington and there continued. There is no pretence of defence on the merits as to Easterday, though Charles and Harry Greenhaus argue that the evidence did not connect them with the scheme. Except for this, the appeals altogether depend upon supposed errors in the conduct of the trial, thought to be fatal to the judgments. Of these the most important is that arising from the exclusion of a question upon the cross-examination of the principal witness for the prosecution. She had been in the defendants' employ as secretary and the like, and her testimony was extremely damaging to them; they do not exaggerate in describing her as the mainstay of the prosecution, though not indeed necessary to make a case for submission. She was cross-examined at great length—a hundred pages of the printed record—by five separate counsel; with the result of greatly discrediting her veracity, by showing that she had been guilty of perjury and theft, as well as other unfavorable conduct. Her past life, places of residence and association with the defend-

166

ants was brought out in minute detail, indeed with much repetition.

 However, at one part of her examination she was asked where she lived at the time of the trial, and this was excluded. The argument is that as this is within the recent ruling of the Supreme Court in Alford v. U. S., 282 U. S. 687, 51 S. Ct. 218, 75 L. Ed. 624, the convictions cannot survive the error. We are not clear that that decision was intended to be so far an absolute as to yield to no circumstances whatever, or that no matter how freely the examination may have ranged, the exclusion of the answer must invariably result in a reversal. Such has not been the more modern attitude in matters of the sort, and there is at least some color for supposing that the rule is not to apply inexorably, no matter how completely the witness's character, antecedents and connection with the defendant are laid bare. It is directed particularly, if we read aright, towards disclosing whether he is under present compulsion, or at least control, by the prosecution, and declares that this may be penetrated with the utmost freedom. The situation at bar may have been that, but there was not a whisper of it from any of the defendants, and if this be the true basis of the decision, it does not rule. Nevertheless, without committing ourselves as to its scope, we shall for argument assume that it is parallel, had the point been properly presented.

It first arose in cross-examination by the counsel for the defendant, Dorfman, to whom the witness refused to give her address. When the judge inquired as to the materiality of the question, he was told that it was to test her credibility. The prosecution then for the first time interposed in support of the witness, saying that there were good reasons why she should not answer, apparently intimating that she might be threatened or otherwise coerced by the defendants. The judge "sustained the objection," though strictly the prosecution had made none, and Dorfman excepted. He was acquitted and as to him the error was of course harmless. None of the other defendants repeated the question, nor did they suggest that they wished the point reserved in their favor. So far as appears, they thought the answer of no consequence, and let the incident pass. The witness, after the extended cross-examination we have mentioned, was finally excused, and the prosecution's case closed.

In defense Easterday put her again on the stand, at the outset calling to the judge's attention that she was hostile, so as to secure larger latitude upon direct than would otherwise have been his right. In the course of this, the question was repeated and the witness again refused to answer, adding as a reason this time that she had been threatened. The question being pressed the judge suggested that the answer was not "necessary, unless you state why you want to know —that is one thing. I shall not at this time make her answer. That matter was gone into on the direct, wasn't it?" Easterday's counsel answered that he had not been able to find that it was "in the case," to which the judge replied: "Is it material where she now is staying?" The counsel made no answer save to except, and the matter again ended.

We need not say that by calling the witness in defence Easterday was precluded from impeaching her (Wigmore §§ 909, 911); arguendo we may assume the opposite. But an examination, avowedly direct, even though in this case much of it was scarcely of that nature, is not normally concerned with impeaching the witness. It appears to us a reasonable requirement that when a question has that purpose, it shall be declared. The counsel made no such explanation; the question occurred in the midst of an examination which was apparently designed to bring out facts favorable to the defence. Apparently, it could not affect the event but it might be a step; nobody could certainly know but the examiner. If he wished to impeach her, he should have declared that purpose, so that the court might make an intelligent ruling. As direct examination it was not pertinent. And even if it was obviously cross-examination, it was reasonable for the judge to ask why he wished the answer. True, as Alford v. U. S. makes plain, it is impossible for a cross-examiner to declare in advance what he can prove; he cannot tell till he has inquired. Yet it is fair to ask of him how the question can be relevant; what is the purpose of the inquiry. Cross-examination should not extend to aimless shots at random; a trial presupposes rational processes applied to the testimony uttered. The judge was not bound to allow what on its face had no bearing on the witness's credibility; the question was not inevitably and patently material. The situation thus was quite different from that in Alford v. U. S., where the defendant put as a ground that he had been told that the witness was in the custody of the prosecution. Perhaps that was true here too, but, as we have said, there was not the slightest intimation of it, and, so far as appeared, the an-

swer, after all that had gone before, would have contributed nothing to the truth.

 The other points are of minor importance and readily disposed of. A witness, Mary Amm, had used as a spur to her memory a statement prepared by the prosecution from her story before trial. The judge refused to let the defendants see the paper. She used it only as to certain statements made by one defendant who was not tried, and by another who though convicted had since died. Assuming the judge's refusal to be an error, the defendants were entitled to see only those parts of the paper used by the witness. Since these affected the three appellants only indirectly, if at all, the supposed error was trivial and may be disregarded.

Certain telephone slips were put in evidence to prove that the defendants had made long distance calls, this being the means by which they inveigled their victims. Some of these bore the initials of the operator who identified them on the stand; some did not. The alleged error is in admitting the last. When offered by the prosecution, the only objection was by Dorfman's counsel, that the slips did not "bind" him. This in the first place is not available to the appellants, and in the second did not raise any question as to the competency of the papers. Had it done so, the missing testimony in support might, and probably would, have been supplied. On familiar principles the objection is not now available.

A witness, Benjamin, testified to certain talks on the telephone with Charles Greenhaus, whom he had heard speak before. On his direct examination he first swore to a talk favorable to Greenhaus and no objection was taken, though he did not say that he recognized the voice. Later he swore to two more talks, prejudicial to him, to which he objected, because Benjamin went no further than to say that he thought the voice Greenhaus's. This was enough to admit the testimony, for it was for the jury to decide how much weight to give it. The ruling was right when made. On cross-examination it was however brought out that Benjamin's only ground for recognizing the voice was because the speaker said that he was Greenhaus. However, the judge was not then, or later, asked to change his ruling, and whether he would have done so no one can say. In any event he did not pass on the changed situation, and could therefore make no error, as he was not required to act of his own motion. So far as he could know, the defendant meant to rely upon the effect of his cross-examination with the jury. The same answer applies to the argument that these talks were one of the overt acts laid in the conspiracy count. This would in any case be material only by reasoning of exaggerated artificiality; that is, that the jury might have found this overt act alone out of thirteen laid, some of which were proved beyond any fair doubt.

Finally, the Greenhauses urge that there was no evidence to connect them with the scheme. They were both salesmen for Easterday, used the telephones at the offices to call up customers, went with or followed Easterday to Washington when the new office was opened, and dictated a part of the papers used. It is not often that subordinates are more completely implicated in the main design, and it is not necessary to detail the other evidence on which the case against them depended. The crime was proved beyond the slightest question; it was unusually brazen, and nothing but the plainest error ought to disturb the convictions. There was none of any moment.

Judgment affirmed.