**José BENEDICTO LEBRÓN,**
Defendant, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 5065.

United States Court of Appeals
First Circuit.

March 8, 1957.

José Benedicto Lebrón, pro se.

Rubén Rodriguez Antongiorgi, U. S. Atty., San Juan, P. R., and Luis Domingo Miranda, Asst. U. S. Atty., San Juan, P. R., on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and KALODNER, Circuit Judges.

MAGRUDER, Chief Judge.

A grand jury returned to the United States District Court for the District of Puerto Rico an indictment under 21 U.S.C.A. § 174 charging that on or about February 27, 1955, in San Juan, Puerto Rico, José Benedicto Lebrón and Rafael Guemarez Bonay "knowingly and fraudulently received, concealed and facilitated the transportation and concealment of an amount of a narcotic drug, namely, two capsules of diacetyl morphine hydrochloride, commonly known as heroin, after said heroin had been imported and brought into the United States contrary to law, knowing that said heroin had theretofore been imported and brought in contrary to law, in that the importation and bringing of any narcotic drug into the United States, except such amounts of crude opium and coca leaves as the Commissioner of Narcotics finds to be necessary to provide for medical and legitimate uses only, is prohibited."

Rafael Guemarez Bonay entered a plea of guilty to the indictment and was placed on probation for a period of two years. José Benedicto Lebrón, however, pleaded not guilty, and was later brought to trial before a jury. The jury having returned a verdict of guilty, this defendant was sentenced to a prison term as a second offender and took an appeal from the judgment of conviction. At our session in Puerto Rico last month the case was submitted to us on briefs.

Having read in its entirety the original record on appeal, we find no substance to appellant's case.

■ The district court committed no error in denying appellant's motion for judgment of acquittal. There was ample evidence offered by the government to warrant the jury's verdict.

At the opening of the trial, the Assistant United States Attorney offered a stipulation that if Carmen Ramos Sandoval were called as a witness she would testify "that she is the person in charge of issuing the permits or licenses for the transfer of drugs in Puerto Rico, that she works for the Department of Finance, and that no license has been issued to the defendant José Benedicto Lebrón lawfully, within this jurisdiction." Immediately after this statement, counsel for the defendant said: "I would stipulate that defendant has never been issued a permit for transferring drugs." After the trial judge had made his charge to the jury, the Assistant United States Attorney called attention to a provision in 21 U.S.C.A. § 174 reading:

"Whenever on trial for a violation of this subsection the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

At this point counsel for the defendant commented: "Then it is his duty to explain away why he had it, but since we stipulated that. If he is found to have heroin in his possession, he is guilty because I already stipulated that." Though appellant, testifying in his own behalf, denied in toto the principal testimony offered by the prosecution, the jury evidently disbelieved him, and on the contrary accepted the government's testimony tending to show that he had heroin in his possession.

Agent Miguel Angel Bermudez Morales testified for the government that he and two other Internal Revenue Agents met Rafael Guemarez Bonay on a street corner in San Juan on the night of February 27, 1955; that appellant José Benedicto Lebrón joined them later; that while they were all together, and in the presence of appellant, Guemarez told the agents that they could get some drugs from Benedicto, whom he called "Manzanita"; that appellant then told them that he had to go to his house "but that if we reached an agreement in the deal, we could see him at his house, that Rafael knew where he lived"; that subsequently, upon an agreement having been reached with Guemarez, the witness gave Guemarez five dollars for two capsules of the drug; that they thereupon drove to appellant's home; that Guemarez got out of the car and went upstairs, and soon returned with two capsules in a cellophane wrapper which he handed to the witness. This witness did not actually see appellant at his home and could not testify from his own knowledge that appellant had supplied the capsules to Guemarez. Agent Bermúdez further testified that later Guemarez stated that he wanted to purchase a capsule of the drug for his own use; that the parties drove to a hideout where Guemarez picked up a receptacle containing a hypodermic needle and other paraphernalia for the administration of the drug (which paraphernalia were marked for identification but never introduced into evidence); that the witness gave Guemarez another $2.50; that they returned to appellant's house; that Guemarez went upstairs the second time and returned with a single capsule, which he later emptied and administered to himself; that the witness retained overnight the two capsules which had been given him by Guemarez upon the occasion of his first visit to appellant's house; that the next morning he delivered these two capsules to Agent Torres Medina at the narcotics division; that the witness accompanied Agent Torres Medina and saw him deliver the capsules to the federal chemist, Mr. Washington Llorénz. Mr. Lorénz testified for the government that he analyzed the two capsules thus received and that the same contained diacetyl morphine hydrochloride, commonly known as heroin.

Rafael Guemarez Bonay, having been summoned as a witness for the govern-

ment against appellant, testified to the meeting with the agents at the street corner, to which reference has been made, on which occasion appellant was present. He testified further that upon receipt of the five dollars from Agent Bermúdez he went upstairs to appellant's living quarters and there received the two capsules of the drug from appellant and returned with them and handed them to the narcotics agent.

It appears that at the trial counsel for appellant objected that Guemarez, as a "co-indictee," was incompetent to appear as a witness against appellant. This objection of course was rightly overruled. If Guemarez had not pleaded guilty and been sentenced but was on trial with his co-defendant José Benedicto Lebrón, Guemarez could not have been compelled to testify; but under the circumstances he was a competent witness against appellant, and this is no less so because he had to be brought to testify under subpoena, instead of appearing "voluntarily."

Guemarez may be described as an accomplice of appellant's; but it is not the law in the federal courts that uncorroborated testimony of a witness will never suffice to convict a defendant. See United States v. Mule, 2 Cir., 1930, 45 F. 2d 132. Furthermore, there was ample corroboration here in the testimony of Agent Bermúdez as to what took place at the street corner conference in the presence of the defendant. The trial judge charged the jury, without objection so far as appears, that though the testimony of Guemarez as an accomplice did not necessarily need corroboration, the fact that he was an accomplice and had pleaded guilty to the offense in which he was jointly charged with appellant might be considered by the jury "in testing his credibility but only insofar as the credibility of any interested witness will be tested." Appellant was entitled to no more than that.

Apparently appellant has been studying Wigmore on Evidence, for in his brief pro se he states, referring to the prosecution testimony: "It is further contended that the government failed to produce the autoptic proference which might have substantiated the testimony of the witness. At no stage of the trial did the government present or offer as evidence the alleged amount of heroin or the empty plastic containers which were charged as having been fraudulently received, concealed and facilitated for transportation by defendant." There is no rule of law which requires the government to prove its case by "real evidence," that is, by offering as an exhibit the specific heroin which the defendant was alleged to have had in his possession, or the empty plastic containers which held the heroin at the time the same was alleged to have been delivered to Guemarez by defendant. See Francis v. United States, 10 Cir., 1956, 239 F.2d 560, 562. As a matter of fact the government chemist Llorénz did testify that the specific heroin was no longer available because the contents of the two capsules were consumed in the analysis; that, as to the two capsule containers, he did not remember specifically what had become of them, but he testified that sometimes "they get so deteriorated and become a gummy substance."

Finding no error, a judgment will be entered affirming the judgment of the District Court.