**UNITED STATES of America,**
Appellee,

v.

**Anthony CARMINATI, William McKenney, Jr., and Michael Galgano,**
Appellants.

**No. 386, Docket 24570.**

United States Court of Appeals
Second Circuit.

Argued June 7, 1957.

Decided Aug. 23, 1957.

Writ of Certiorari Denied Nov. 25, 1957.
See 78 S.Ct. 150.

Paul W. Williams, U. S. Atty., Southern District of New York, New York City (Jerome J. Londin, Robert Kirtland, Asst. U. S. Attys., New York Ciy, of counsel), for appellee.

Jacob W. Friedman, New York City, for appellants Carminati and McKenney.

Curran, Mahoney, Cohn & Stim, New York City (Menahem Stim, Allen S. Stim, Otto F. Fusco, New York City, of counsel), for appellant Galgano.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

**642**

WATERMAN, Circuit Judge.

Appellants were convicted upon an indictment charging them with a conspiracy in violation of 18 U.S.C. § 371 to receive, possess, and sell heroin in violation of the federal narcotics laws. 21 U.S.C.A. §§ 173, 174; 26 U.S.C. §§ 4701, 4703, 4704(a), 4724(c), 4771(a). Each appellant contends that the evidence as to him was insufficient to prove his participation in the conspiracy and each assigns as error certain rulings made by the trial court as to the admissibility of evidence. In addition to these contentions appellants Carminati and McKenney also contend the trial court erred in curtailing the cross-examination of two government witnesses, with respect to certain portions of the instructions to the jury, and in refusing the jury a full transcript of the stenographic minutes of the trial.

■ A conspiracy to violate the narcotics laws was conclusively proved. Ample evidence was introduced at the trial from which the jury could find the existence of a conspiracy at the center of which were Ralph and Salvatore Russano,[1] who were shown to be middlemen in a system of narcotics distribution involving more than 20 persons. In May 1955 Ralph Russano and one Michael Botto[2] (named in the indictment as a codefendant and co-conspirator with the Russanos, the appellants, and a number of others) began dealing in heroin together. Shortly thereafter, the appellant McKenney, a cousin of Russano, joined their operation and the profits of the enterprise were then divided among the three of them. Botto later left this partnership and went into business for himself, although he continued to obtain his supply of heroin from Russano. In September or October of 1955, during the course of a discussion in which Botto complained to Russano of the quality of the heroin with which the latter had been supplying him, Russano said that he had a supplier from whom a better quality of heroin might be obtained. In response to an inquiry from Botto, Russano stated that Galgano was the supplier to whom he had referred. Subsequently, in October of 1956, Botto had a discussion with Galgano, whom he had testified to having met twice previously. During the course of this discussion, Galgano admitted supplying Russano with substantial amounts of heroin.[3] A month later Galgano was arrested in his home where the arresting officers discovered twelve Bankers Trust Company envelopes of the same type that had elsewhere been taken by government agents from the possession of other members of the conspiracy and that had been shown to have been used by these persons to deliver heroin.

David Oglesby, named in the indictment as a co-conspirator, implicated McKenney. He testified that in August of 1956 he called Ralph Russano to make arrangements for a purchase of heroin on behalf of a government agent. Russano said that he was unable to make the delivery but would send McKenney. Later that day McKenney kept the appointment with Oglesby which had been arranged by Russano.

1. The Russanos were both named as co-conspirators and codefendants in the indictment, which charged them with substantive offenses as well. To each of these charges they pleaded guilty and on February 5, 1957 both were sentenced by the trial court.

2. Botto pleaded guilty to the conspiracy charge placed against him, but the record does not disclose whether he has been sentenced.

3. Galgano, when arrested, denied that he knew Botto. He recalled, however, that on the date the above discussion allegedly occurred, a man known to him as "Blackie" was forcibly ejected by him from the bar where Botto testified that the conversation had taken place. A witness corroborated this version of the incident. The trial judge charged the jury that Galgano could be convicted only if they believed Botto's testimony. Hence they must have accepted Botto's version of the events of that day and have believed that the conversation took place then and there as Botto detailed it.

Botto also implicated McKenney. In addition to his testimony concerning the partnership between Russano, McKenney, and himself during the summer of 1955, Botto testified that on October 18, 1956, McKenney participated in a discussion, which took place in a federal building, in which arrangements were made for the sale of heroin. Later that day Botto and a government agent met McKenney and several others, at which time McKenney told them that he had just refused to make a sale because the purchaser did not have enough money.[4] This testimony was confirmed by the government agent who was with Botto.

Oglesby was also the government's chief witness against the appellant Carminati. He testified to numerous transactions in which Carminati participated, only several of which need to be related. In the middle of October 1955, at which time Oglesby had made a purchase from the Russanos, Ralph Russano identified Carminati as one of his suppliers. A month later, when Oglesby again contacted Russano about making a purchase, he was told that he would have to wait a while. After a discussion with Carminati, Russano told Oglesby that he was unable to obtain heroin for him at that time. In December of 1955, Russano informed Oglesby that if he wanted heroin he would have to take it "cut." When Oglesby objected, Russano made a telephone call and shortly thereafter Carminati came in. After a short discussion Carminati told Oglesby, "you will have to take seven ounces of cut stuff, which is the best we can do." Oglesby testified that he again had contact with Carminati in January of 1956 when he approached Russano about making a sale

to him on consignment. Russano called Carminati, and after the latter advised him not to enter into the transaction, Russano told Oglesby, "I am sorry. Nothing can be done. I can't do anything." In addition, Oglesby testified to several other transactions in which Carminati was involved, and a government agent gave other evidence tending to prove Carminati's participation in the conspiracy.

This evidence adduced against each appellant, if competent as to him, was clearly sufficient to enable the jury to find that each of the appellants participated in the conspiracy charged by the Government in the indictment. Both Carminati and McKenney were shown to have participated actively in transactions between Russano and his customers. In addition, there was ample evidence from which the jury could believe that Carminati and Galgano each supplied heroin to the Russanos on more than one occasion. The circumstances, therefore, are unlike those in United States v. Reina, 2 Cir., 1957, 242 F.2d 302, where evidence of a single sale by one Valachi was held insufficient to justify an inference that Valachi knew the sale was in execution of the larger venture which made up the conspiracy. Cf. United States v. Ah Kee Eng, 2 Cir., 1957, 241 F.2d 157. In the present case, the evidence established that Carminati knew the Russanos intended to resell the heroin. There was other evidence, consisting of Galgano's admission to Botto that he supplied substantial quantities of heroin to Russano, which justified an inference that Galgano also knew that Russano intended to resell the heroin which he obtained from Galgano.[5]

---

4. The testimony of Botto is ambiguous with respect to whether McKenney was the seller or the purchaser in this transaction. The government agent, however, testified that McKenney was the seller and the trial court so indicated to the jury in its summation of the evidence. The appellants do not contest this interpretation of the evidence.

5. Botto's testimony concerning this admission was as follows:

"Q. And did you discuss narcotics with Galgano? A. I did.

"Q. What did you say to Galgano and what did he say to you about narcotics? A. I told him that I was paying $400 an ounce for the stuff that he was giving to Ralph.

In United States v. Tramaglino, 2 Cir., 1952, 197 F.2d 928, 930, a similar case, we stated:

"Here then we have evidence of several sales, at different periods, by Rosario and Tramaglino, of marihuana to the same group of buyers with knowledge on the part of the two suppliers that several conspirators were involved in the purchases and that the purchases were for resale. This was enough, we think, to show that each appellant, as supplier, participated in, and acted to further the ends of, the conspiracy. It did not matter that neither had dealings with one another; each performed the same role at successive stages for the same ends. The overall conspiracy was the plan conceived by the intermediary group * * * to buy and resell marihuana at a profit. Both Rosario and Tramaglino knew and participated in this plan by furnishing the essential ingredient—the marihuana. In United States v. Bruno, 2 Cir., 105 F.2d 921, 922, a case quite similar to this one, we said, in confirming a conviction of smugglers, middlemen, and retailers, for a single conspiracy to import and distribute narcotics illegally: ' * * * the smugglers knew that the middlemen must sell to the retailers, and the retailers knew that the middlemen must buy of importers of one sort or another. Thus the conspirators, at one end of the chain knew that the unlawful business would not, and could not, stop with their buyers; and those at the other end knew that it had not begun with their sellers. That being true, a jury might have found that all the accused were embarked upon a venture, in all parts of which each was a participant, and an abettor in the sense that the success of the part with which he was immediately concerned, was dependent upon the success of the whole.' "

Since the evidence we have reviewed is sufficient to sustain the jury's verdict, we turn to the several contentions of the appellants that portions of that evidence were improperly admitted and that other errors occurred during the course of the trial.

▆▆▆ The statement made by Galgano to Botto in October 1956, that he had supplied Ralph Russano with heroin, was admitted only against Galgano; and was properly so received as an admission by Galgano of his role in the conspiracy. 4 Wigmore on Evidence § 1048 (3d Ed. 1940). Galgano, however, contends that the admission was not corroborated as required by Opper v. United States, 1954, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101. We think that, with respect to Galgano, Russano's disclosure to Botto that Galgano was his supplier (provided this conversation is admissible), together with the Bankers Trust Company envelopes found in Galgano's possession, constitute sufficient independent evidence of participation in the conspiracy to corroborate Galgano's admission and thus to satisfy the requirements of the Opper case. Galgano further contends, however, that Russano's statement to Botto implicating Galgano was hearsay and was not admissible against him. We disagree with Galgano.

▆▆ The declaration of a conspirator is admissible against a co-conspirator if there is independent evidence of the existence of the conspiracy, Glasser v. United States, 1942, 315 U.S. 60, 62

---

"Mr. Fusco: That is objected to.

"Q. Exactly what did you say to him, sticking as carefully as you can to the language of the conversation. A. I told him I was buying narcotics from Ralph and paying $400 an ounce, and that Ralph had told me 'He was getting it from you.'

"He told me that when he gave the stuff to Ralph the stuff was all right."

Galgano's reply to Botto's statement that Galgano was the source of the heroin which Russano sold to Botto constitutes an admission by Galgano that he did, in fact, supply heroin to Russano. 4 Wigmore on Evidence, § 1071 (3d Ed. 1940).

S.Ct. 457, 86 L.Ed. 680, and if the declaration is in furtherance of the conspiracy, Krulewitch v. United States, 1949, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790. Galgano's admission, properly admitted whether or not it was corroborated, provided sufficient independent evidence of the existence of the conspiracy to satisfy the first requirement. We believe that Russano's statement to Botto naming Galgano as a source of supply from whom a better quality of heroin might be obtained, must be considered as in furtherance of the conspiracy. Botto was a regular customer of Russano. He complained to Russano of the quality of the heroin which he was obtaining from the latter. Russano indicated that he could obtain pure heroin, and in response to Botto's question, stated that Galgano was the source of supply. We understand this statement to be further assurance that a better quality heroin was available and therefore in furtherance of the conspiracy to distribute narcotics.

■ Galgano's contention that the Bankers Trust Company envelopes were inadmissible at the trial is also without merit. Similar envelopes, shown to be connected with the conspiracy, had already been introduced into evidence. While Galgano had the right, which he exercised, of offering other explanations for his possession of the envelopes, the fact that this evidence, standing alone, might not have been sufficient to sustain a conviction did not affect its admissibility. It was relevant as bearing upon his connection with the conspiracy. Cf. Sanders v. United States, 10 Cir., 1956, 238 F.2d 145.

■ The appellants Carminati and McKenney, relying on Alford v. United States, 1931, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624, urge as ground for reversal that two witnesses for the Government, Oglesby and Schwartz, were excused from giving their addresses on cross-examination. In Alford the Supreme Court held that a witness may be cross-examined as to his residence because this information would enable the jury to identify the witness in his environment, and might, under some circumstances, provide new avenues of exploration for defense counsel. With these factors in mind, we turn to the facts of the present case. With respect to Oglesby, the claim is frivolous. Appellants obtained all the information about his residence that they asked of him. Nor is there any merit in their contention that they were erroneously denied knowledge of the residence of Schwartz. Schwartz was a witness for the Government and during his cross-examination counsel for one of the defendants questioned Schwartz about certain transactions occurring during June 1956. His question as to the address of the witness at that time was met by an objection from the Government which was sustained by the court. The only information which was elicited was that Schwartz resided in the Bronx. During the testimony of the very next witness, however, Schwartz's address was revealed. Under the circumstances of this case, we cannot find that the appellants were injured by the ruling curtailing Schwartz's cross-examination or that the ruling was reversible error. Schwartz had undergone thorough cross-examination. He had testified that he lived with his parents in the Bronx and he gave full details of past and present employment. His testimony further revealed that he had peaded guilty and was awaiting sentence in the present case, that he had never before been an informer or witness for any prosecutor in a criminal case, that he had no previous criminal record, and that he did not use narcotics. This testimony gave the jury ample information with which to determine the credibility of the witness. Furthermore, although the next witness revealed Schwartz's address, defense counsel did not attempt to recall him or in any way seek to make use of this information.

■ Carminati seeks a reversal of his conviction because of an incident which occurred during the testimony of Botto. Botto testified that he was arrested on the conspiracy charge and tak-

en to the West Street jail. He related a conversation he had while there with Rich, a codefendant, in which Rich stated that Carminati was Ralph Russano's connection. Counsel objected to the testimony. The court ordered it stricken and instructed the jury to disregard it. If the testimony had remained in evidence, Rich's participation in the conspiracy having ended with his arrest, Graham v. United States, 8 Cir., 1926, 15 F.2d 741, reversal would be required. Krulewitch v. United States, supra. But counsel for Carminati did not object to the question put to Botto, and, consequently, the answer was received before objection was made. The testimony was stricken as soon as counsel made known his objection, the trial court then proceeding at once to protect the defendant's rights. No error was committed.

■■■ Other issues raised by Carminati and McKenney deserve only brief mention. Both object to the charge of the trial court that "constructive possession" of a narcotic drug is sufficient to raise the presumption created by 21 U.S.C.A. § 174. However, the charge was contained in that portion of the instructions which dealt with the substantive counts against another defendant not involved on this appeal and did not deal with the conspiracy. Under these circumstances, even if the charge were erroneous, as to which we express no opinion, the appellants would have no ground for complaint.

Carminati assigns as error that portion of the trial court's summation of the evidence dealing with Oglesby's testimony. The trial court, in an unqualified statement, referred to Carminati as the man whom Oglesby had identified as being involved in a certain·transaction. Carminati contends that Oglesby had testified only that Carminati resembled the man whom he had seen, but on the whole record it is clear that that trial court was correct in its summation.

■■■ Nor was there error in the refusal of the trial court to provide the jury with a full set of the minutes. We have previously recognized that this is a matter within the discretion of the trial court, U. S. v. Rosenberg, 2 Cir., 1952, 195 F.2d 583. Moreover, it is evident from the record that in the present case the jury obtained all of the information which it had requested.

Other errors alleged by the appellants to have been committed during the course of the trial have been considered by us, but they are without merit and do not warrant discussion.

Judgments affirmed.