**UNITED STATES of America,**
**Appellee,**

v.

**Frank RICH, Appellant,**

**No. 56, Docket 24570.**

United States Court of Appeals
Second Circuit.

Argued Nov. 10, 1958.

Decided Jan. 12, 1959.

**416**

Richard A. Green, Asst. U. S. Atty., Southern Dist. of New York, New York City (Arthur H. Christy, U. S. Atty., John C. Lankenau, George I. Gordon, Jerome J. Londin, Asst. U. S. Attys., Southern Dist. of New York, New York City, on the brief), for appellee.

Hal F. Reynolds, New York City, for appellant.

Before HINCKS, LUMBARD and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Frank Rich appeals from a judgment of conviction after a jury trial for violations of the narcotics laws and for a conspiracy to violate these laws. The indictment under which Rich was tried contained fourteen counts and named fifteen defendants as well as nine additional co-conspirators. Rich was tried with three other defendants, Anthony Carminati, William McKenney and Michael Galgano, who were indicted with Rich in the conspiracy count (Count 14). Rich, together with David Shackelford, was charged with making a sale of one-half ounce of heroin on or about June 23, 1956 (Count 3); Rich alone was charged with making a sale of one ounce of heroin on or about June 28, 1956 (Count 4); and with possession and transportation of one ounce of heroin on or about August 22, 1956 (Count 8). He was sentenced to five years on Counts 3 and 4 and to ten years on Counts 8 and 14, the sentences to run concurrently. All four defendants were found guilty of the conspiracy charges (Count 14). The judgments of conviction against Carminati, McKenney and Galgano have been affirmed by this court (United States v. Carminati, 2 Cir., 1957, 247 F.2d 640, certiorari denied, 1957, 355 U.S. 883, 78 S.Ct. 150, 2 L.Ed.2d 113).

### Counts Three and Four (Possession and Sale).

There is more than sufficient testimony to justify the jury's verdict of guilty with respect to the possession and sale of heroin by Rich. In about the third week of June, Rich sold to two customers one-half ounce of heroin. A week later the second sale was made of one ounce on or about June 28, 1956. These sales are not seriously disputed and present no real question for appellate review. The evidence was sufficient, was properly admitted, and the trial court's charge correctly presented the issues to the jury. The jury was entitled to infer from all the evidence that the substance sold was heroin. Circumstantial evidence satisfies the proof burden (Lebron v. United States, 1 Cir., 1957, 241 F.2d 885, certiorari denied, 1957, 354 U.S. 911, 77 S.Ct. 1298, 1 L.Ed.2d 1429; Toliver v. United States, 9 Cir., 1955, 224 F.2d 742).

### Count Eight (Facilitating Transportation).

 On August 22, 1956 Rich, driving a car of his partner Shackelford, was observed by federal narcotics agents meeting with the Russanos, codefendants named in the conspiracy count and known to be suppliers of narcotics. From the Russanos Rich previously had purchased heroin for resale. While driving, and before delivery could be made, Rich was intercepted by the narcotics agents, but when they approached, displaying their official badges and with guns drawn, Rich suddenly shifted the car into reverse and backed up at high speed along Third Avenue, New York. The car crashed into an elevated railroad pillar. Rich's companion was knocked unconscious and Rich fled, escaping apprehension for two days. A package of heroin was found on the rear floor of the wrecked car.

Rich challenges the sufficiency of the evidence as establishing that he knowingly transported the heroin found in the car. He also claims that the trial court committed reversible error in not making a specific charge to the effect that knowledge of possession is an essential element of the crime. In its charge the court reviewed the facts, saying amongst other things, "[I]f you find that Rich was driving the car; that the heroin was found in the car; and that it was in the car when Rich ran from it, if you accept Agent Dugan's version of what transpired thereafter, you may draw an inference that he had possession of the heroin, even though it was found in the rear of the car." The court correctly instructed the jury as to the law with respect to flight, saying that the fact that Rich fled when ordered to surrender to a federal officer could be considered as circumstantial evidence of the consciousness of guilt. In addition the court pointed out that the question of willful intent is one of fact and that intent and motive are to be determined from all the acts, conduct and circumstances, and from the inferences reasonably to be drawn therefrom.

A reading of the charge as a whole indicates that the jury was sufficiently instructed that Rich could not be convicted of facilitating transportation of narcotics unless he knew that he had actual or constructive possession of heroin. The fact that heroin was found in the car, together with his observed conduct, was more than sufficient to justify the inferences the jury must have drawn from these facts in finding him guilty.

### Count Fourteen (Conspiracy).

As in most of the narcotics conspiracy cases presented to the appellate courts, appellant seizes upon various well known cases dealing with quite dissimilar fact situations and endeavors to fit the facts of his case into the pattern of those cases in which other appellants have been successful, so that he can argue for a similar result. To this end appellant urges as controlling Kotteakos v. United States, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557; United States v. Falcone, 2 Cir., 1940, 109 F.2d 579, affirmed, 1940, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128; United States v. Peoni, 2 Cir., 1938, 100 F.2d 401; United States v. Reina, 2 Cir., 1957, 242 F.2d 302; United States v. Koch, 2 Cir., 1940, 113 F.2d 982.

 Conspiracy and the facts relevant to its establishment must be viewed against a background of the type of crime involved. A different procedure is to be expected to be used by defendants engaged in disseminating narcotics than by persons desiring fraudulently to obtain loan guarantees under the Housing Act, 42 U.S.C.A. § 1701 et seq. (Kotteakos v. United States); to distribute counterfeit bills (United States v. Peoni); or to make a single sale of drugs (United States v. Reina and United States v. Koch). The business of distributing drugs to the ultimate user seems to require participation by many persons. Rarely, if ever, do they all assemble around a single table in one large conspiracy simultaneously agreed upon and make a solemn compact orally or in writing that each will properly perform his part therein. In most cases many of

the persons who form links in the distribution chain appear never to have met other equally important links. In the present case there is adequate testimony if believed by the jury (as it must have been), to establish that Rich not only was a part of the chain of distribution but that he knew he was a part and was acquainted with a substantial number of the other participants. Witnesses testified that Galgano and Carminati were suppliers and that the Russano family together with McKenney received heroin from them. Rich not only knew the Russanos and another selling agent, his codefendant Botto, but acted as a middleman himself with respect to other selling agents. Rich was also in the role of a retailer having his own customers, some of whom he even assigned to others when he was temporarily unable or unwilling to serve them. He made his purchases and sales with such frequency and always from and to members of the conspiracy ring that it would be a legal travesty to characterize this course of conduct as composed of a series of isolated transactions or, as Rich would have it, "multiple conspiracies."

 A workable definition of conspiracy applicable equally in all cases and to all types of crime is a virtual impossibility. The courts have recognized this, in effect, by holding that persons can be involved in a conspiracy even though they do not know all other members of the conspiracy or participate in each phase. Recognition is thus given to reality, namely, that there must of necessity be a division of labor and function by those engaged in this business. If there be knowledge by the individual defendant that he is a participant in a general plan designed to place narcotics in the hands of ultimate users, the courts have held that such persons may be deemed to be regarded as accredited members of the conspiracy. United States v. Bruno, 2 Cir., 1939, 105 F.2d 921, reversed on other grounds, 1939, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257; United States v. Tramaglino, 2 Cir., 1952, 197 F.2d 928, certiorari denied, 1952, 344 U.S. 864, 73 S.Ct. 105, 97 L.Ed. 670.

### Limitations of Cross-Examination.

 Appellant further charges as error that on cross-examination by his counsel Abraham Schwartz and Michael Botto, two key government witnesses, were excused from giving the addresses at which they resided during periods of time claimed by appellant to have been important. Under ordinary circumstances counsel for defendants should be given the broadest scope in their cross-examination not only to develop facts but leads from which other facts might be obtained. However, this is not an absolute right. Where danger to the witness may be involved or where the cross-examination is obviously outside the scope of any reasonable relationship to the case the trial judge in his discretion is privileged to keep the cross-examination within proper bounds. Specifically, in this case the witness Botto was asked where he had been living on October 16, 1956. The witness stated that he did not wish to give his address because of fear of intimidation. The trial judge first overruled the objection to the question. Upon claim by the witness that "They might go up there and try to intimidate me" the judge held a conference not in the presence of the jury and requested cross-examining counsel to state the materiality of the address. After counsel had stated his reason in detail the court held that "counsel has not in the slightest degree shown the materiality of the question put to the witness as to where he lived in October 1956, * * *" (Government Appendix, 44a) and sustained the objection.

 Whether such an objection should be sustained or overruled depends almost entirely upon the facts of each case and the circumstances under which the question arises. There well may be situations in which the address should be given as was the case in Alford v. United States, 1931, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624. On the other hand in

United States v. Easterday, 2 Cir., 1932, 57 F.2d 165, certiorari denied, 1932, 286 U.S. 564, 52 S.Ct. 646, 76 L.Ed. 1297, this court recognized that "it is impossible for a cross-examiner to declare in advance what he can prove" but held that "it is fair to ask of him [the cross-examining counsel] how the question can be relevant; what is the purpose of the inquiry * * *." The principle was expressed that "The judge was not bound to allow what on its face had no bearing on the witness's credibility; the question was not inevitably and patently material" (57 F.2d 165, 166). Furthermore, "The extent of cross-examination * * * is within the sound discretion of the trial court" (Alford v. United States, supra, 282 U.S. at page 694, 51 S.Ct. at page 220).

The trial court by sustaining this objection did not cut off inquiry into Botto's background, including his numerous prior convictions or his generally unsavory way of life. Botto's cross-examination covered almost two hundred pages of the record and brought out a mass of facts designed to affect his credibility in the minds of the jury. In view of defense counsel's inability to show the materiality of Botto's address, under all the circumstances there was no error in sustaining the objection to that question.

The fact that Schwartz was excused from giving his address was urged as a ground for reversal by Rich's codefendants Carminati and McKenney in United States v. Carminati, supra. This court held that those appellants were not injured by the trial court's ruling, since the jury had ample information with which to judge the credibility of the witness. The same is true as to Rich. There was no reversible error.

The judgment is affirmed. The court expresses its appreciation to Hal F. Reynolds, Esq., assigned by this court, for his able representation of appellant's cause.