**UNITED STATES of America,**
**Appellee,**

v.

**Tyrell EVANS, Craig Moye, James Calhoun, Robert Thomas, Defendants–Appellants.**

Nos. 05–5753–cr(L), 05–5829–cr(Con), 05–6597–cr(Con), 06–1049–cr(Con), 06–1060–cr(Con).

United States Court of Appeals, Second Circuit.

Sept. 18, 2008.

William T. Koch, Jr., Koch & Koch, Lyme, CT, for Defendant–Appellant Thomas.

Helen Harris (Andrew P. Gaillard, on the brief), Day Berry & Howard LLP, Stamford, CT, for Defendant–Appellant Evans.

Susan M. Damplo, Ardsley, N.Y. for Defendant–Appellant Moye.

H. Gordon Hall and Patrick F. Caruso, Assistant U.S. Attorneys (William J. Nardini, Assistant U.S. Attorney, on the brief) for Kevin J. O'Connor, U.S. Attorney for the District of Connecticut, New Haven, CT, for Appellee.

Present: Hon. ROBERT A. KATZMANN, Hon. DEBRA A. LIVINGSTON, Circuit Judges, Hon. J. GARVAN MURTHA, District Judge.[1]

---

1. The Honorable J. Garvan Murtha, United States District Judge for the District of Vermont, sitting by designation.

## SUMMARY ORDER

Defendants Tyrell Evans, Robert Thomas, and Craig Moye appeal judgments of conviction entered in the United States District Court for the District of Connecticut (Hall, *J.*). We assume the parties' familiarity with the facts and the record of prior proceedings.

### A. Tyrell Evans

Evans, who pleaded guilty to conspiracy to distribute crack cocaine, now challenges the reasonableness of his sentence.

■ First and foremost, he argues that a lesser sentence was called for in his case because of the unfairness of the ratio used by the Guidelines to determine sentences for offenses involving crack cocaine as compared to powder cocaine offenses. The thrust of his objection is that the district court erred in assuming that this was an issue for Congress alone to decide and on which Congress had clearly spoken.

As we now know, Evans's argument to the district court presaged the Supreme Court's recent holding in *Kimbrough v. United States* that a district court need not "adhere to the 100–to–1 ratio for crack cocaine quantities other than those that trigger the statutory mandatory minimum sentences." —— U.S. ——, 128 S.Ct. 558, 572, 169 L.Ed.2d 481 (2007). Evans therefore asks us to remand this case pursuant to *United States v. Regalado*, 518 F.3d 143, 148–150 (2d Cir.2008) (per curiam). In response, the Government argues that a remand here is unnecessary because Evans's total offense level, and therefore his Guidelines range, would also have been a product of his status as a "career offender."

The Government is correct as a general matter that when "a district court sentences a defendant pursuant to a Guidelines range that results from his status as a career offender, and without reliance upon the Guidelines' drug quantity table and the crack to powder ratio that it incorporates, the sentence does not present the type of error for which remand in accordance [with] *Regalado* is appropriate." *United States v. Ogman*, 535 F.3d 108, 111 (2d Cir.2008). But our reading of the record leaves us uncertain that Evans *was* necessarily sentenced "without reliance upon the ... drug quantity table." That issue was not squarely presented to the district court because, as all parties understood, Evans's total offense level would have remained the same regardless of whether it was calculated by reference to the drug table or his "career offender" designation.

Before imposing sentence, Judge Hall indicated that she felt bound to apply the crack-to-powder ratio because it was an issue "for Congress to decide and Congress has clearly said that it wants a disparity." Next, without addressing its salience to a potential non-Guidelines sentence (as that seemed unnecessary), Judge Hall found that the "career offender" designation had substantially overstated Evans's criminal history and reduced his criminal history category pursuant to Guidelines § 4A1.3(b)(3)(A), adding that "the guidelines limit me.... I'm limited to a one level reduction [in the criminal history category] on that basis." In light of these findings, we cannot be certain that the district court understood its full discretion under *Kimbrough* to impose a non-Guidelines sentence in the event it determined that § 3553(a) called for a sentence "at odds with" the sentence indicated by the crack Guideline and the (overstated) career offender label. *Kimbrough*, 128 S.Ct. at 576. We therefore remand under *Regalado* to permit the district court to answer this question.

It is premature, in light of our decision to remand, to address Evans's assertion that the district court failed more generally to appreciate the advisory nature of the Guidelines or that the sentence imposed was unreasonable. But in framing the issues on remand, we note that Evans's claim that he is entitled to an additional, one-level reduction in his offense level under Guidelines § 3E1.1(b) has no merit. Subject to very narrow limitations, none of which are relevant to this case, "a government motion is a necessary prerequisite to the additional one-level decrease under Guidelines § 3E1.1(b)." *United States v. Sloley,* 464 F.3d 355, 359 (2d Cir.2006). No such motion has been made by the Government.

## B. Robert Thomas

Thomas, the only defendant in this 49-defendant case to proceed to trial, challenges the denial by the district court of his motion for a judgment of acquittal, or, in the alternative, a new trial. He also objects to the district court's exclusion of a set of "demonstrative exhibits" his counsel sought to use at closing argument as well as to aspects of the district court's jury instruction.

We review *de novo* the district court's denial of a defendant's motion for an acquittal under Rule 29. *United States v. Florez,* 447 F.3d 145, 154 (2d Cir.2006). We review the denial of a Rule 33 motion for a new trial for abuse of discretion, reversing where necessary to prevent "manifest injustice." *United States v. Canova,* 412 F.3d 331, 348–49 (2d Cir.2005).

A defendant challenging a district judge's denial of a motion for acquittal on the basis of insufficient evidence " 'bears a heavy burden.' " *United States v. Jackson,* 335 F.3d 170, 180 (2d Cir.2003) (quoting *United States v. Finley,* 245 F.3d 199, 202 (2d Cir.2001)). We must uphold this verdict if the evidence, viewed in the light most favorable to the Government, could lead any rational trier of fact to conclude beyond a reasonable doubt "(1) that the scope of the criminal enterprise proven fits the pattern of the single conspiracy alleged in the indictment, and (2) that the defendant participated in the alleged enterprise with a consciousness of its general nature and extent." *United States v. Rosa,* 11 F.3d 315, 340 (2d Cir.1993) (quotation marks omitted).

Repeatedly, we have said that the unlawful "agreement needed to support a charge of conspiracy need not be explicit but may be tacit." *United States v. Beech–Nut Nutrition Corp.,* 871 F.2d 1181, 1191 (2d Cir.1989). For as we long ago explained:

> The business of distributing drugs to the ultimate user seems to require participation by many persons. Rarely, if ever, do they all assemble around a single table in one large conspiracy simultaneously agreed upon and make a solemn compact orally or in writing that each will properly perform his part therein.

*United States v. Rich,* 262 F.2d 415, 417 (2d Cir.1959). Often, "the persons who form links in the distribution chain appear never to have met other equally important links." *Id.* at 418.

Thomas's brief notes repeatedly that "none of the forty four (44) co-defendants, outside of the core group, talked with Mr. Thomas ... about the single drug distribution conspiracy charged in the indictment." However, the "fact that not each of the conspirators was acquainted with each of the others is of no significance. It is sufficient for the government to have proven ... that each knew from the scope of the operation that others were involved in the performance of functions vital to the success of the business."

*United States v. Sisca,* 503 F.2d 1337, 1345 (2d Cir.1974) (internal quotation marks omitted). In this case, the jury could reasonably have concluded that Thomas knew he was one of many street-level sellers for the "core group," and we have said in analogous circumstances that "retailers whose existence is actually unknown to each other can be held to have agreed in a single conspiracy if each knew or had reason to know that ... [the] middleman handles a larger quantity of narcotics than one retailer can sell." *United States v. Barnes,* 604 F.2d 121, 155 (2d Cir.1979) (citation omitted).

Thomas also claims that he had nothing more than a "buyer-seller" relationship with the "core group." However, the main case he relies on for this argument, *United States v. Gore,* 154 F.3d 34 (2d Cir.1998), involved a charge of conspiracy based almost entirely on "one transaction." *Id.* at 41. By contrast, the evidence against Thomas demonstrated an ongoing relationship, including several sales in a short span, as well as a complex set of understandings critical to the continued viability of the operation. Specifically, the jury heard that Thomas was not permitted to use drugs, was supplied in confidence, and, on at least one occasion, was fronted crack by the organization. When Thomas was arrested shortly thereafter, he reached out to the leaders of the operation, assuring them, "I got several hundred on the books, man, you know. My loyalty to be there, man." He communicated that he was willing to "work off" his bail and fulfill his obligations with respect to the crack fronted him. We conclude that the "dealings between the parties" and the "prolonged relationship" provided sufficient evidence of the conspiratorial agreement. *See Beech–Nut Nutrition Corp.,* 871 F.2d at 1191.[2]

Failing the above, Thomas argues the evidence showed only that he joined a five-person conspiracy, not the 49–person conspiracy charged in the indictment. Whether the Government's proof establishes a single conspiracy or multiple conspiracies "is a question of fact for a properly instructed jury." *United States v. Johansen,* 56 F.3d 347, 350 (2d Cir.1995). While Thomas requested a more detailed charge, we find the jury instructions adequately conveyed the critical concept—that to sustain a conviction, " 'there must be [a] finding of the single conspiracy charged and individual knowing participation' " in it by Thomas. *United States v. Aracri,* 968 F.2d 1512, 1520 (2d Cir.1992) (alteration in original) (quoting *United States v. Tramunti,* 513 F.2d 1087, 1108 (2d Cir.1975)).

Consequently, our review is limited to deciding whether any rational trier of fact could have concluded beyond a reasonable doubt that Thomas joined the conspiracy charged in the indictment. We have said that "[a] single conspiracy may be found where there is mutual dependence among the participants, a common aim or purpose or a permissible inference from the nature and scope of the operation, that each actor was aware of his part in a larger organization where others performed similar roles equally important to the success of the venture." *United States v. Williams,* 205 F.3d 23, 33 (2d Cir.2000) (internal quotation marks omitted). We have frequently "upheld convictions despite claims of multi-

2. For the same reason, this case is distinguishable from the Seventh Circuit's decision in *United States v. Lechuga,* 994 F.2d 346 (7th Cir.1993) (en banc). Judge Posner indicated that the result would likely have been different had the wholesaler "hired [the street seller] to assist him in reaching his market ... implying something more than a series of spot dealings at arm's length.... Vertical integration is not a condition of conspiracy." *Id.* at 349.

ple conspiracies, where the coconspirators knew with certainty that other suppliers and dealers existed, even though they did not know the others personally." *United States v. Cambindo Valencia,* 609 F.2d 603, 625 (2d Cir.1979); *see also United States v. Berger,* 224 F.3d 107, 115 (2d Cir.2000) ("In the context of narcotics operations ... even where there are multiple groups within an alleged conspiracy, a single conspiracy exists where the groups share a common goal and depend upon and assist each other, and we can reasonably infer that 'each actor was aware of his part in a larger organization where others performed similar roles.' " (quoting *United States v. Bertolotti,* 529 F.2d 149, 154 (2d Cir.1975))). Here, we conclude that sufficient evidence supports the jury's finding that Thomas and the other street sellers were part of a single, overarching organization.

█ Thomas's remaining arguments do not require extensive discussion. We review the district court's ruling precluding his demonstrative exhibits for abuse of discretion. *See United States v. Arena,* 180 F.3d 380, 400 (2d Cir.1999). In this case, "[a]fter viewing them, the court found that the demonstrative exhibits,"— which illustrated in graphic form the law of conspiracy as defense counsel understood it—"presented a risk of confusing the jury with respect to the law and the trial record and ... would not be helpful to the jury." This ruling, far from an abuse of discretion, was mindful of Judge Friendly's observation that the "pictorial distinction between 'chain' and 'spoke' conspiracies can obscure as much as it clarifies." *United States v. Borelli,* 336 F.2d 376, 383 (2d Cir.1964). Moreover, the district court carefully instructed the jury on these same points in its charge.

Finally, we see no error in the purported failure of the charge to incorporate quantity as an element of the offense. *See United States v. Gonzalez,* 420 F.3d 111, 122 (2d Cir.2005) (finding that the "drug quantity provisions of § 841[are] elements of an aggravated drug offense"). The practical effect of separating the issue of quantity from the issue of conspiratorial liability on the verdict form was not to eliminate an element, but to permit the jury to convict Thomas of the lesser-included offenses of 21 U.S.C. § 841(b)(1)(B) or 21 U.S.C. § 841(b)(1)(C) instead of 21 U.S.C. § 841(b)(1)(A), a result consistent with "Fed.R.Crim.P. 31(c) [which] permits a jury to return a verdict of guilty as to 'an offense necessarily included in the offense charged.' " *United States v. Diaz,* 176 F.3d 52, 100 (2d Cir.1999). To the extent Thomas's argument is a challenge to the discretion of the district court to charge a lesser-included offense without prompting from the Government, we find it to be without merit. *See United States v. LoRusso,* 695 F.2d 45, 52 (2d Cir.1982) (leaving it within the discretion of the "trial judge [to] implement Rule 31(c) in a number of ways").

## C. Craig Moye

Currently pending before this Court are two motions regarding Moye. The first is a motion by Susan M. Damplo to be relieved as Moye's appellate counsel, pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), on the ground that there are no non-frivolous issues to appeal. The second is a cross-motion by the Government for summary affirmance on the same basis.

Moye pleaded guilty to one count of conspiracy to possess with intent to distribute crack cocaine and was sentenced principally to a term of imprisonment of 132 months. At sentencing, the district court made plain that it was calculating Moye's sentence in accordance with his

status as a career offender under Guidelines § 4B1.1. In a statement of reasons, however, the court noted that it had "departed downward based on the fact that the defendant was not considered a career offender and calculated his guidelines without the career offender enhancement." This statement cannot be reconciled with the manner in which the district court calculated Moye's adjusted offense level. We therefore cannot be certain whether Moye was sentenced pursuant to Guidelines § 4B1.1 or § 2D1.1.

In consequence, it would be premature to address whether Moye's appeal presents any non-frivolous issues without first requesting clarification from the district court as to which Guidelines provisions it relied upon in determining Moye's sentence. Accordingly, we remand the case to the district court, pursuant to the procedures set forth in *United States v. Jacobson,* 15 F.3d 19, 21–22 (2d Cir.1994), for the limited purpose of supplementing the record to clarify whether Moye was sentenced pursuant to Guidelines § 4B1.1 or § 2D1.1.

The mandate shall issue forthwith with respect to Moye. The parties are to inform the Clerk of the Court by letter within twenty-one days of when the district court has issued its clarification. Following such notification, jurisdiction of Moye's appeal automatically will be restored to this Court without need for either party to file a new notice of appeal. After jurisdiction is restored, this panel will resume consideration of the pending motions.

**D. Conclusion**

The judgment of conviction of Robert Thomas is hereby **AFFIRMED.** The conviction of Tyrell Evans is hereby **AFFIRMED** in part and the case **REMANDED** for further consideration consistent with this order.[3] The case is **REMANDED** with respect to Craig Moye for further proceedings consistent with this order. The mandate shall issue forthwith with respect to Craig Moye.

---

**3.** On remand, the district court should also examine (and if necessary correct) an apparent clerical error in the judgments of both Evans and Thomas. All parties here agree that Evans was convicted of 21 U.S.C. § 841(b)(1)(C) and Thomas was convicted of 21 U.S.C. § 841(b)(1)(B). Rule 36 provides the requisite authority for modifying a judgment where a "clerical mistake" is evident on the face of the record. *See United States v. Werber,* 51 F.3d 342, 347 (2d Cir.1995).